UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE O.N. EQUITY SALES COMPANY,

    Plaintiff,

vs.

FINRA DISPUTE RESOLUTION, INC., et al.,

    Defendants.

Case No. 1:07cv804

Judge Michael R. Barrett

## ORDER

This matter is before the Court pursuant to the Motion for Preliminary Injunction filed by Plaintiff (Doc. 11) as well as two Motions to Dismiss filed by Defendants (Doc. 15 and 16). Responsive pleadings were filed and a hearing was held on December 12 , 2007. All parties were present at the hearing and presented oral argument to the Court. This matter is now ripe for review. For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED, in part, and DENIED, in part, and the Court finds Plaintiffs' Motion for a Preliminary Injunction is DENIED. Additionally, the Court finds the Motion to Quash Service of Process (Doc. 6) is DENIED, as moot and the Motion to Strike and/or Precluding any Defenses asserted by Defendants at to Lack of Jurisdiction or Venue (Doc. 29) is DENIED, as moot.

FACTS

The Parties in this matter have a long history together. The individual defendants have each brought claims against Plaintiff in arbitration through Defendant FINRA (Doc. 7, ¶4). Each arbitration matter is currently pending before FINRA (Doc. 7, ¶6); however,

Plaintiff disputes that it is required to submit to arbitration, a matter that is not before this Court (Doc. 7, ¶47). Plaintiff has filed numerous other complaints in various U.S. District Courts around the country seeking declaratory and injunctive relief as to Plaintiff's obligations to arbitrate. (Doc. 7, ¶53-58). Apparently, several courts have found against Plaintiff and have compelled arbitration (Doc. 7, ¶58). Plaintiff has appealed those decisions. (Id.). Additionally, Plaintiff's preliminary statements of answer filed in the arbitration actions specifically disclaimed any obligation to arbitrate (Doc. 7, ¶59). Due to Plaintiff's objection to arbitration, Plaintiff has refused to execute the Uniform Submission Agreement ("USA") required by FINRA. Plaintiff argues that the signing of such USA will waive any objections it has to the issue of arbitrability. (Doc. 7, ¶60). Three separate arbitration panels have ordered Plaintiff to sign the USA. (Doc. 7, ¶63).

Plaintiff filed its first amended complaint (Doc. 7) on November 8, 2007 requesting the Court to order the following declarative and injunctive relief: FINRA does not have jurisdiction to determine arbitrability; FINRA has no basis for compelling Plaintiff to waive its objections to arbitration; FINRA has no basis for compelling Plaintiff to execute the USA"); and FINRA can not enforce orders to compel execution of the USA.

FINRA argues that Plaintiff has an obligation to arbitrate as a condition of its membership to FINRA and that FINRA's Code of Arbitration Procedure covers the underlying disputes. Further, FINRA argues that Plaintiff is seeking a prohibited interlocutory relief of the arbitrators' decision to order Plaintiff to execute the USA. (See Doc. 16).

The individual Defendants also argue that Plaintiff is seeking interlocutory relief (See Doc. 15).

LAW AND ANALYSIS

I.      Motion to Dismiss

The Court will first address Defendants' Motion to Dismiss.  A motion to dismiss pursuant to Rule 12 (b)(6) operates to test the sufficiency of the complaint.  The court is required to construe the complaint in the light most favorable to the Plaintiff, and accept all well-pleaded factual allegations in the complaint as true.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) and *Lewis v. ACB Business Services*, 135 F.3d 389, 405 (6th Cir. 1998).  A court, however, will not accept conclusions of law or unwarranted inferences which are presented as factual allegations.  *Blackburn v. Fisk University*, 443 F.2d 121, 124 (6th Cir. 1974).  As the Supreme Court recently held in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), a complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id*. at 1969.  "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct 1955, 1964-65 (2007) (citations omitted); *Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).

The Sixth Circuit has held that the Federal Arbitration Act ("FAA") forbids immediate

appeals of interlocutory orders giving way to the policy favoring arbitration. *Arnold v. Arnold Corp. Printed Communications for Business*, 920 F.2d 1269, 1276 (6th Cir. 1990); *MJCM, LLC v. IntelliShop, LLC*, 507 F. Supp. 2d 830 (N.D. Ohio 2007). The only interlocutory orders in this matter are the three arbitration orders that have compelled Plaintiff to sign the USA. Thus, based up *Arnold, supra* this Court finds that Plaintiff is, in fact, seeking a prohibited review of interlocutory orders. Therefore, the Court finds that Defendants' motions to dismiss is GRANTED only as to Plaintiff's request that FINRA can not enforce orders to compel execution of the USA and DENIED as to the other relief requested of Plaintiff as it has plead enough facts to state a claim for relief that is plausible on its face. See below for further explanation.

  II. Preliminary Injunction

Plaintiff bears the heavy burden of demonstrating its entitlement to a preliminary injunction: "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566, 573 (6th Cir. 2002). In determining whether to grant injunctive relief, this Court must weigh four factors: (1) whether the moving party has shown a strong likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Id.* "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. National Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir.1997) ("While,

as a general matter, none of these four factors are given controlling weight, a preliminary injunction issued where there is simply no likelihood of success on the merits must be reversed.").

Plaintiff relies mainly on *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995) while Defendants assert that *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79 (2002) is the proper authority. The Court finds both cases to be helpful. Each case raises the question of arbitrability but at different stages in the litigation. However, the Court finds *Howsam* to be more on point.

In *First Options*, the arbitrators ruled on the merits of the case then the Kaplans filed a motion to vacate the arbitration award in the District Court. The question the Court faced in *First Options* was what is the standard of review as it relates to the arbitrability question. The Court held that if the parties agreed to submit the arbitrability question itself to arbitration "then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate", *i.e.,* giving considerable leeway to the arbitrator. *First Options*, 514 U.S. 943 citing *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986) and *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960). "If, on the other hand, the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *Id.*(emphasis in original). The Court found that the Kaplans never agreed to arbitration, let alone the question of arbitrability, thus, they were entitled to an independent review.

In *Howsam,* after Ms. Howsam chose NASD as her arbitration forum and signed the

5

Uniform Submission Agreement, Dean Witter Reynolds filed suit in the District Court asking that the Court determine that the dispute was ineligible for arbitration because it was untimely, *i.e.*, more than six years old. The Court found that the time limits issue was one for an arbitrator to decide. In so holding, the Court stated that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83, *citing Steelworkers, supra* and *First Options*, 514 U.S. at 942-943. Further, the question of arbitrability is "an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Id. citing AT&T Technologies, Inc., supra* and *First Options*, 514 U.S. at 944. This statement was then further clarified by the Supreme Court. "A gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Id.* at 83-84, *citing First Options*, 514 U.S. at 943-946. In addition, "a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is [also] for the court." *Id.* at 84, *citing AT&T Technologies*, 475 U.S. at 651-652. On the other hand, an arbitrator should decide "procedural questions which grow out of the dispute and bear on its final disposition." *Id.* In addition, an arbitrator should decide "allegations of waiver, delay, or a like defense to arbitrability. *Id.*

To summarize, the Supreme Court has stated, quoting from the comments to the Revised Uniform Arbitration Act of 2000 ("RUAA"), "in the absence of an agreement to the contrary, issues of substantive arbitrability... are for a court to decide and issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are

for the arbitrators to decide.'" *Howsam*, 537 U.S. at 85, *citing RUAA §6, comment 2, 7 U.L.A.,13. See also Smith v. Dean Witter Reynolds, Inc.*, 102 Fed. Appx. 940, 943-944 (6th Cir. 2004)*.*

    1.    Strong Likelihood of Success on the Merits

The parties seem to dispute which revisions of the NASD Code of Arbitration Procedures ("Code") are applicable. The Code was amended effective April 16, 2007 for all cases filed after that date.[1] However, the Court finds both provisions to be sufficiently similar for the Court's purposes. Section 10301(a) states as follows:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by a duly executed and enforceable written agreement or upon the demand of the customer.

Section 10301(a) was superceded by 12200 which now states, in relevant parts, as follows:

> Parties must arbitrate a dispute under the Code if:
> -Arbitration under the Code is either: (1) Required by a written agreement, or requested by the customer;
> -The dispute is between a customer and a member or associated person of a member; and
> - The dispute arises in connection with the business activities of the member or the associated person... .

The Plaintiff argues that the arbitration claims are not arbitrable because the claimants are not "customers" of the O.N. Equity Sales Company and thus, they are not required to arbitrate with them. Defendants disagree. However, the issue of whether or

---

[1]The individual Defendants assert that all the relevant arbitrations were filed prior to April 16, 2007 and thus, the older version is applicable.

not the claimants are "customers" is not before this Court. The main issue before this Court is the issue of who has jurisdiction to decide that question.

It is undisputed that Plaintiff and FINRA have a written agreement to arbitrate as evidenced by Plaintiff's membership in FINRA. The Court must now consider if the issue raised by Plaintiff is a "gateway" question or a "procedural" one. As stated above,"a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court." *Howsam,* 537 U.S. at 84. However, procedural questions "which grow out of the dispute and bear on its final disposition" are for an arbitrator. *Id.* Additionally, the *Howsam* Court also stated that "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it." *Howsam*, 537 U.S. at 85. If any doubts remain regarding the arbitrability of a claim, they must be resolved in favor of arbitration. *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc*., 350 F.3d 568, 573 (6th Cir. 2003)(internal citations omitted). Where the arbitration clause is broad, as in this case, "only an express provision excluding a specific dispute, or 'the most forceful evidence of a purpose to exclude the claim from arbitration,' will remove the dispute from consideration by the arbitrators." *Highlands Wellmont Health Network, Inc.,* 350 F.3d at 577 (*quoting AT & T Techs*., 475 U.S. at 650).

The relevant clause at issues states, in part, that arbitration is required when "the dispute is between a customer and a member", such as Plaintiff. See Code Section 12200 or its predecessor 10301(a). Plaintiff disputes that the claimants are customers. For Plaintiff to be successful the Court would have to find that the issue of whether the claimants are, in fact, customers would be a "gateway" question for the Court. It is

8

arguable that this "particular type of controversy is for the court." *Howsam,* 537 U.S. at 84. However, the Court finds that the more compelling argument is that it is a procedural question for an arbitrator to decide. *See Dealer Computer Servs. v. Champion Ford*, 2008 U.S. Dist. LEXIS 5061 (E.D. Mich. 2008) (holding that the AAA arbitration panel was the proper authority to decide the question whether the parties' contracts forbid class arbitration). The Code specifically states, at Section 12413, "[t]he Panel has the authority to interpret and determine the applicability of all provisions under the Code. Such interpretations are final and binding upon the parties." This indicates to the Court that the arbitrators have the authority to determine if a claimant is a customer as construed under the Code. Thus, based upon the above the Court does not find that Plaintiff has established a strong likelihood of success on the merits.

    2.    Irreparable harm if the injunction is not issued.

Plaintiff argues that it will suffer irreparable harm if the injunction is not issued because it will be forced to arbitrate a dispute where it had no contractual obligation to do so. This argument is consistent with the Sixth Circuit's holding that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83, *citing Steelworkers, supra* and *First Options*, 514 U.S. at 942-943. However, "[t]here is nothing inherently unfair [ ] about being required to participate in arbitration, especially where one has contractually agreed to resolve disputes via arbitration." *Pritchard v. Dent Wizard Int'l Corp.*, 275 F. Supp. 2d 903, 919 (D. Ohio 2003). By being a FINRA member securities firm the Plaintiff has undeniably agreed to arbitrate "any dispute, claim, or controversy". See Section 10301(a); *See also Liberte Capital Group, LLC v. Capwill*, 2005 U.S. App. LEXIS 18324 (6th Cir. August, 24,

2005). Thus, the Court finds that it will not be irreparably harmed by participating in arbitration.

In addition, Plaintiff is concerned that by being forced to arbitrate and to sign the USA that it will be forced to waive its right to object to the question of arbitrability in federal court. The Court finds that Plaintiff will not be waiving its rights as it has repeatedly stated its objection for the record before the various arbitration panels, has filed actions in district courts all over the country challenging the arbitrability of the claims, has appealed at least some of the decisions from the district courts compelling arbitration, and has filed the instant action. Furthermore, the individual claimants have conceded that Plaintiff will not waive any rights to appeal the issue of arbitrability. See Doc. 22, p7. In addition, *Cleveland Electric Illuminating Co., et al. v . Utility Workers Union of America,* 440 F.3d 809 (6th Cir. 2006) supports this finding. The Court in *Cleveland Electric* found that Cleveland Electric had waived the issue of who had the authority to decide the arbitrability issue by submitting the matter to arbitration "without reservation." *Id.* at 814. As previously stated above, such is not the case here.

    3.    Substantial Harm to Others if the Injunction is Issued.

The Court agrees with Plaintiff that any order granting Plaintiff an injunction protecting its right to object to arbitrability would not cause substantial harm to the Defendants as the Plaintiff is participating in arbitration, except for its reluctance to sign the USA.

    4.    The Public Interest.

It is well settled that the Federal Arbitration Act, 9 U.S.C. §1, *et seq.* evidences Congress' intent to favor arbitration. *See also Moses H. Cone Memorial Hospital v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). However, it is also well settled that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. 83. As previously stated, Plaintiff has unquestionably agreed to arbitration as a condition of being a FINRA member. Thus, the public interest element favors Defendants. As Defendant FINRA points out, "[t]he requirement that FINRA member firms arbitrate customer disputes is integral to FINRA's function as a self-regulatory organization established pursuant to the Maloney Amendment, Section 15A of the Securities Exchange Act of 1935, 15 U.S.C. §78o-3."

Based upon the foregoing the Court finds that Plaintiff's motion for a preliminary injunction (Doc. 11) is hereby DENIED.

    III.    <u>Conclusion</u>

For the reasons set forth below, Defendants' Motion to Dismiss (Doc. 15 and 16) are GRANTED, in part, and DENIED, in part, and the Court finds Plaintiffs' Motion for a Preliminary Injunction (Doc. 11) is DENIED. Additionally, the Court finds the Motion to Quash Service of Process (Doc. 6) is DENIED, as moot and based upon the foregoing, the Motion to Strike and/or Precluding any Defenses asserted by Defendants at to Lack of Jurisdiction or Venue (Doc. 29) is also DENIED, as moot.

**IT IS SO ORDERED**.

                                            s/Michael R. Barrett
                                            Michael R. Barrett, Judge
                                            United States District Court